Filed 6/5/25

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| COYOTE AVIATION CORPORATION, | |
| Plaintiff and Appellant, | E081591 |
| v. | (Super.Ct.No. CIVSB2203398) |
| CITY OF REDLANDS, | |
| Defendant and Respondent. | |
| CITY OF REDLANDS, | |
| Plaintiff and Respondent, | E083738 |
| v. | (Super.Ct.Nos. ACIAS23000240 & LLTVA2200544) |
| COYOTE AVIATION CORPORATION, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of San Bernardino County. Winston S. Keh and Charles J. Umeda, Judges. Affirmed.

Fennemore, Marlene Allen Murray, David D. Werner; Fennemore Wendel and Thiele R. Dunaway for Plaintiff, Defendant and Appellant.

Best Best & Krieger, Amy E. Hoyt, Jessica K. Lomakin and Scott W. Ditfurth for Defendant, Plaintiff and Respondent.

On April 4, 2000, plaintiff and appellant Coyote Aviation Corporation (Coyote) entered into a 20-year lease (April Lease) with the City of Redlands (City) for property located at the Redlands Municipal Airport (Property). Coyote intended to build hangars on the Property and lease them to pilots in need of storage for their planes. The parties negotiated a 20-year term for the April Lease and agreed that Coyote, with proper notice, could twice exercise a 15-year option (Option) to extend the lease. The April Lease would terminate on April 4, 2020, unless Coyote exercised an Option.

The parties signed an amended lease on September 5, 2000, based on Coyote being unable to take possession of the Property until that date (Amended Lease). The new move-in date was September 5, 2000. The Amended Lease had the original termination date of April 4, 2020. Several months after the Amended Lease was signed, Coyote raised the issue with a City official that the Amended Lease should terminate on September 5, 2020, in order to be a 20-year lease, but no written amendment to the Amended Lease was ever executed by the parties. In June 2020, Coyote attempted to exercise the Option to extend the Amended Lease by sending written notice to the City. The City informed Coyote that it was too late and that the Amended Lease had terminated on April 4, 2020. The City considered Coyote a holdover month-to-month

2

tenant under the terms of the Amended Lease. The City issued a 30-day notice to quit the Property to Coyote.

Coyote filed an action against the City for breach of contract, specific performance, breach of the implied covenant of good faith and fair dealing, declaratory relief and promissory estoppel/detrimental reliance.[1] The trial court sustained the City's demurrer to the first amended complaint (FAC) in the action and entered judgment against Coyote. When Coyote did not vacate the premises after the 30-day notice to quit, the City filed an unlawful detainer action against Coyote. The trial court granted summary judgment in favor of the City and ordered Coyote to vacate the Property.

In this appeal Coyote claims, as to the demurrer, that the trial court erred by sustaining the City's demurrer to the breach of contract claim based on the City breaching the Amended Lease by refusing to extend the lease term and rejecting Coyote's exercise of the 15-year Option; the City is estopped from asserting that Coyote's exercise of the 15-year Option was untimely as the City caused any failure by Coyote to timely exercise the option; and the City waived any objection to Coyote's exercise of the 15-year Option. The trial court also erred by sustaining the City's demurrer to the cause of action of the implied covenant of good faith and fair dealing. Coyote also contends the trial court erred by sustaining the demurrer on a reformation cause of action raised in the original complaint based on it pleading sufficient facts to state a claim for reformation of the

---

[1] The appeal in case No. E081591 relates to the grant of the demurrer. The appeal in case No. E083738 relates to the unlawful detainer action filed by the City. We have consolidated the two cases and this opinion will resolve both cases.

3

Amended Lease, the statute of limitations was tolled by the statements and conduct of the City's employees, and the City is estopped from raising the statute of limitations as a bar to Coyote's reformation cause of action.. Coyote further contends that it alleged sufficient facts to state a claim for declaratory relief and promissory estoppel. Coyote insists that it can amend the FAC to raise an equitable estoppel claim. Finally, Coyote contends that if this court reverses the judgment, the award of attorney's fees to the City should be reversed.

Coyote further claims, as to the demurrer, that the City breached the Amended Lease by preventing it from removing the improvements on the Property. Coyote contends that it can allege facts to support a claim of unjust enrichment based on the City taking control of the tenant improvements made by Coyote on the Property. As will be discussed *post*, these issues are not properly raised on appeal as they were not decided by the trial court and are part of another ongoing case.

With respect to the appeal of the grant of summary judgment for the unlawful detainer, Coyote contends there are triable issues of fact as to whether the City should be estopped from contending that Coyote's exercise of the 15-year Option was untimely. Coyote relied on the course of conduct and representations by the City that it would be able to exercise the 15-year Option. Coyote also argues that the City's attempt to deprive Coyote of the 15-year Option is barred by promissory estoppel and that the City waived any objection to Coyote's exercise of the 15-year Option. Extrinsic evidence showed ambiguity in the Amended Lease. Finally, there were triable issues of fact whether

4

Coyote gave proper notice of its intent to exercise the 15-year Option in December 2019 and January 2020.

## FACTUAL AND PROCEDURAL HISTORY

### A.     FIRST COMPLAINT AND DEMURRER

Coyote filed its first complaint on February 8, 2022 (Complaint).  In the Complaint, Coyote alleged several causes of action including, breach of contract, specific performance, breach of implied covenant of good faith and fair dealing and reformation. Coyote alleged that in 1999, it approached the City in order to rent the Property to construct a multi-hanger building.  On April 4, 2000, Coyote and the City signed the April Lease, which stated it was for a term of 20 years, with two successive 15-year Options to extend the April Lease upon 45 days written notice to the City clerk.  Due to Coyote being unable to immediately occupy the Property, Coyote and the City agreed to amend the April Lease.

The parties signed the Amended Lease and it was approved by the City council on September 5, 2000.  In place of the term of 20 years, the Amended Lease provided the termination of the Amended Lease was on April 4, 2020, the same date as the April Lease.  The Amended Lease expressly rescinded the April Lease.  Coyote alleged in the Complaint that it first became aware that the Amended Lease was expiring on April 4, 2020, on November 30, 2000.  Coyote contacted the City manager and Coyote alleged that the City manager agreed to amend the Amended Lease to fix the error.  The termination date was never corrected by written amendment to the Amended Lease. Coyote noted that the Amended Lease provided for the Property to be 36,000 square feet

5

but it had been increased to 53,658 square feet and Coyote was paying a higher rent than was stated in the Amended Lease.

Coyote alleged, to its detriment, it relied on the termination date orally stated by the City, which it considered to be September 5, 2020. In June 2020 Coyote was in contact with the supervisor at the Redlands Airport, Bruce Shaffer (Shaffer), and the City's assistant director of facilities and services, Tim Sullivan (Sullivan), and they discussed that Coyote was interested in exercising the 15-year Option. Both Shaffer and Sullivan acknowledged that the termination date was April 4, 2020, but Coyote alleged that they discussed that the Amended Lease should expire on September 5, 2020. The City accepted rent on the Property past the April 4, 2020 date. On June 22, 2020, Coyote sent written notice to the City—an email was sent to Shaffer—with an attachment indicating it intended to exercise the first 15-year Option to extend the Amended Lease. The City then notified Coyote that the Amended Lease had expired and that it could not exercise the 15-year Option to extend. The City informed Coyote that it was a month-to-month tenant.

Coyote provided additional information regarding extrinsic evidence that the City and its staff all believed the Amended Lease was for the term of 20 years. This included minutes from staff meetings, Airport Advisory Board meetings and statements from City council members at the time the Amended Lease was approved. Coyote also alleged the City was secretly calculating how much it could make off the Property if Coyote vacated the Property. On March 16, 2021, the City council at a closed meeting voted to terminate the Amended Lease. A termination letter was sent to Coyote on March 17, 2021. Further

6

negotiations were conducted between the City and Coyote regarding an extension of the Amended Lease with a greatly increased rental amount but Coyote did not agree.

Coyote's first cause of action in the Complaint was for breach of contract/specific performance. The City breached the Amended Lease by refusing to honor Coyote's exercise of the first 15-year Option. Coyote sought specific performance of the 15-year Option. The second cause of action was for breach of the covenant of good faith and fair dealing. The City's refusal to honor the 15-year Option was being done in order to position itself to adjust the annual base rent without restriction.

The third cause of action in the Complaint was for common law reformation and under Civil Code section 3399. The parties negotiated a 20-year lease and the Amended Lease provided for a term of 19 years 7 months. The error was through inadvertence or mutual mistake. Coyote was seeking reformation of the Amended Lease to the agreed 20-year term. Coyote's fourth cause of action was for declaratory relief pursuant to Civil Code of Procedure section 1060. Coyote sought a declaration that the Amended Lease ended on September 5, 2020, and that the exercise by Coyote of the 15-year Option was timely. The fifth cause of action was for promissory estoppel. Coyote detrimentally relied on the fact that the Amended Lease was for 20 years and built structures. Coyote's business would suffer if the Amended Lease was terminated. The City, through its actions and words, appeared to agree that the termination date was September 5, 2020.

The April Lease was included with the Complaint. It provided, "The term of this Lease shall be for a period of twenty (20) years and shall commence on the date first

7

written above." The April Lease was signed by the mayor of the City and Gil Brown on behalf of Coyote on April 4, 2000.

Several other exhibits attached to the Complaint detailed the negotiations between Coyote and the City on the Amended Lease. Coyote sent a letter to the City on April 17, 2000, seeking to postpone the start of the April Lease based on Coyote not being able to immediately begin construction on the Property. The City public works director responded to Coyote that it had agreed to amend the April Lease. The new lease would be sent to Coyote for their approval of the changes and then it would be approved by the City council. In the report to the City council for approval of the Amended Lease it was stated that the City staff and Coyote agreed to "minor modifications" regarding the rental terms.

The Amended Lease was signed on September 5, 2000, by the mayor of the City and Brown for Coyote. It included language that Coyote and City had entered into a prior lease for the Property but now "wish to rescind and enter into this new lease in its place." It described the Property as 36,000 square feet. As for the term, "This lease shall remain in full force and effect until April 4, 2020 at which time it shall terminate, unless extended as otherwise provided herein." Coyote had two 15-year Options to extend under paragraph 2.1 of the Amended Lease. Paragraph 2.1 provided, "Tenant shall have two (2) successive options for extending the Term of this Lease for periods of fifteen (15) additional years each. Provided Tenant is in compliance with all terms of the Lease, Tenant may exercise such options by providing written notice to City forty-five (45) days prior to the termination date of this Lease. Any extension of the Term of this Lease

8

pursuant to this section shall be on the same terms and conditions contained in this Lease."

The Amended Lease provided that rent for the Property was $5,724 and could be increased every three years. Coyote also had the option of leasing additional square footage from the City under the same terms of the Amended Lease. Upon termination of the Amended Lease, Coyote was to remove all tenant improvements and deliver the Property in the same condition as the time the Amended Lease was executed. The Amended Lease further provided, "If Tenant, with City approval, remains in possession of the Property without negotiating a new lease, the continued possession by Tenant shall be deemed to be a month-to-month tenancy terminable on thirty (30) days written notice given at any time by either party." Paragraph 25 of the Amended Lease was entitled Notices and stated, "Any notice required by this Lease shall, unless otherwise specified in this Lease, be served by deposit in the United States mail with first-class postage prepaid, addressed to the person and address listed below." The address for the City was the City clerk. The Amended Lease also had a waiver provision that stated, "No waiver by either party of any breach of any condition or covenant of this Lease shall be deemed a waiver of any subsequent breach of the same or any other condition or covenant."

The Amended Lease additionally provided that "This Lease may not be amended or modified except as expressly provided in this section. Any amendment, modification, waiver, consent or acquiescence with respect to any provision of this Lease shall be set forth in writing and duly executed by or on behalf of the party to be bound thereby." It further provided, "This Lease represents the entire and integrated agreement between the

9

parties hereto with respect to the subject matter hereof, and supersedes any and all prior negotiations, representations, agreements and understandings, whether written or oral, between the parties with respect to the subject matter contained herein."

Coyote included several other exhibits with the Complaint setting forth extrinsic evidence that the City and staff all believed that the Amended Lease was for a 20-year term, and the actions taken by the City after the Amended Lease terminated on April 4, 2020.

Coyote also provided its request to renew the 15-year Option. It was dated June 23, 2020, and was addressed to Shaffer and Sullivan at the City of Redlands Municipal Airport. Coyote included a letter from the City dated March 17, 2021, notifying Coyote that the exercise of the 15-year Option was not timely and that it was occupying the Property as a month-to-month tenant. The City offered Coyote a new lease with an increased rent.

The City filed a demurrer to the Complaint. The City alleged Coyote had known about the termination date in the Amended Lease for 20 years. Coyote failed to comply with the terms of the Amended Lease by failing to timely exercise the 15-year Option. There were no written amendments to the Amended Lease and the Amended Lease provided for written amendments, not oral amendments. Further, the Amended Lease contained an integration clause, which provided the only enforceable terms were within the four corners of the Amended Lease. All prior agreements or leases were rescinded. Coyote was seeking to avoid the express terms of the Amended Lease. Further, the

10

claims were time-barred as Coyote admitted knowing about the termination date in the Amended Lease since November 2000.

On September 9, 2022, Coyote filed opposition. Coyote insisted it discovered the termination date error in November 2000 and brought it to the attention of the City. At the same time, the parties agreed to an increase of the size of the rental from 36,000 square feet to 53,658 square feet and Coyote paid a higher rent. Coyote conceded no written amendment was made to the Amended Lease reflecting a different termination date or the increase in square footage. Coyote insisted all of its causes of action were viable based on all parties believing the Amended Lease expired on September 5, 2020. The City filed a reply to the opposition.

The trial court issued a tentative ruling on October 12, 2022. For the first and second causes of action—breach of contract and implied covenant of good faith and fair dealing—the written Amended Lease provided that the termination date was April 4, 2020, and the 15-year Option would have to be exercised 45 days prior to that date. Coyote did not exercise the 15-year Option until June 23, 2020. As such, Coyote's conclusory allegation that it performed its duties under the Amended Lease was not supported and the breach of contract action failed. This equally applied to the second cause of action of implied covenant of good faith and fair dealing as Coyote was required to timely exercise the 15-year Option and it failed to do so. The City's demurrer to the first and second causes of action were sustained with leave to amend.

The trial court further found that the third cause of action for reformation had to be raised within three years from the date the mistake was discovered. Coyote alleged it

11

became aware of the mistake in November 2000. There was no evidence Coyote pursued a remedy within three years of the discovery and it was time-barred. The demurrer to the third cause of action was sustained without leave to amend. The demurrer to the fourth cause of action for declaratory relief was also sustained with leave to amend based on the substantive causes of action failing. The fifth cause of action for promissory estoppel was sustained with leave to amend based on Coyote failing to allege a clear promise made by the City to amend the termination date. The trial court adopted the tentative ruling at a hearing on October 12, 2022, except it allowed for amendment to the third cause of action.

B.    FIRST AMENDED COMPLAINT

Coyote filed the FAC on November 4, 2022. Coyote alleged essentially the same facts that were provided in the Complaint omitting several allegations regarding statements by City council members at the time the Amended Lease was approved. Coyote contacted the City about the termination date on or about December 4, 2000. Coyote alleged that staff from the City made "a clear and substantive promise" that the City would honor the full 20-year term making the expiration date September 5, 2020. Although the Amended Lease was never amended in writing, Coyote relied on the December 2000 promise that the City would honor the full 20-year term. Coyote also alleged for the first time that it provided other notice to exercise the 15-year Option in December 2019 and January 2020. Coyote emphasized that the Amended Lease used the language that Coyote "may" exercise such options by providing written notice to City forty-five (45) days prior to the termination of the Lease. Coyote interpreted "may" as

12

allowing other notice. It provided such notice in December 2019 and January 2020 by tendering lease payments, renewing insurance, obtaining new gate cards, paying property taxes and getting business licenses through the end of 2020. Further, Coyote advised the staff of the Redlands Municipal Airport of its intention to extend the Amended Lease.

Coyote's first cause of action in the FAC was for breach of contract. It alleged it had fully performed its duties under the Amended Lease. Coyote provided notice to the City of its decision to exercise the 15-year Option. The City breached the Amended Lease by failing to honor that Coyote exercised the 15-year Option. The second cause of action was for specific performance. Coyote complied with the requirements in the Amended Lease to exercise the 15-year Option, and in the alternative, the Amended Lease was ambiguous and must be construed against the City. Further, Coyote's failure to provide written notice before February 19, 2020, must be excused due to the City's clear promise that the City would disregard the express deadline and that Coyote could exercise the 15-year Option anytime prior to July 22, 2020. Specific performance was the only adequate remedy.

The third cause of action in the FAC was for breach of implied covenant of good faith and fair dealing. Coyote exercised the 15-year Option prior to the February 19, 2020, deadline by advising officials by email that it intended to exercise the option. Alternatively, no written notice was required based on the clear promise by the City that it would disregard the express deadline. The City's refusal to honor the 15-year Option was done in bad faith in order to interfere with Coyote receiving the benefits of the Amended Lease, and to raise the rent. The fourth cause of action was for declaratory

13

relief. Coyote sought a declaration that the 15-year Option was timely exercised under the terms of the Amended Lease. In the alternative, a declaration that the notice provision for the 15-year Option was ambiguous and unenforceable. Coyote insisted the word "may" in the option clause referred to the requirement of written notice. The fifth cause of action was for promissory estoppel/detrimental reliance. The City promised that it would honor the full 20-year term and therefore Coyote could exercise the 15-year Option prior to July 22, 2020. Coyote relied on the promise by making significant improvements to the Property and paying rent on 53,658 square feet of leased space.

Coyote included many of the same exhibits with the FAC as were included with the Complaint. It did not include much of the extrinsic evidence of former City council members and what they recalled from when the Amended Lease was executed.

C.    CITY'S DEMURRER

On December 14, 2022, the City filed a demurrer to the FAC. The City insisted that Coyote was required under the express terms of the Amended Lease to provide written notice to the City to exercise its 15-year Option. Coyote failed to provide the required written notice. Its claims of breach of contract were not viable as Coyote did not perform its duty as required under the Amended Lease. Further, the use of the term "may" in the clause pertaining to notice to exercise the 15-year Option referred to the fact that Coyote could exercise the 15-year Option but was not required to exercise the option. Accordingly, the first and second causes of action were not viable. As for the third cause of action, no implied covenant could require conduct that contradicted the express Amended Lease provisions. The fourth cause of action for declaratory relief was not

viable as it was derivative of the substantive claims that should be rejected. Finally, the fifth cause of action for promissory estoppel was not viable. In the Complaint, Coyote alleged that the City only stated that it "could" amend the termination date in the Amended Lease which was not a clear and ambiguous promise. Further, the Amended Lease required all amendments be in writing and there had been no pleading of a clear and definite promise by the City to honor the 20-year term. Finally, Redlands Municipal Code section 3.04.010 required all contracts be written, and approved by the City council and the mayor of the City.

Coyote filed opposition to the City's demurrer to the FAC. It insisted that it could give notice other than written notice of its decision to exercise of the 15-year Option, and it did so by advising staff at the Redlands airport it wanted to extend; tendering lease payments; renewing insurance, obtaining new gate access cards and permits through the entirety of 2020. Coyote insisted it delivered notice of exercising its 15-year Option in December 2019 and January 2020. As such, the City breached the contract by not accepting the request. The use of the term "may" allowed for several ways to provide notice that it was exercising the 15-year Option. Further, there was waiver when representatives of the City accepted the 15-year Option in June 2020. Specific performance was the proper remedy. There was a viable claim for promissory estoppel based on the City making a definite promise to honor the 20-year term.

Attached to the opposition were many of the same exhibits attached to the FAC. The FAC and tentative ruling on the Complaint were included as exhibits. The CEO of Coyote, Gil Brown, provided a declaration in support of the FAC. He provided a

15

background on the case similar to the facts in the FAC. He attested that he contacted the City on December 4, 2000, when he noticed the termination date on the Amended Lease was April 4, 2020. He declared that a representative of the City made "a clear and definite promise" that the City would honor the full 20-year term ending on September 5, 2020, and would increase the square footage from 36,000 square feet to 53,658 square feet. Brown insisted he relied on the promise and began paying increased rent for the 53,658 square feet in May 2001. Brown admitted the parties never corrected the Amended Lease in writing but the City accepted the higher rent amount. During December 2019 and January 2020, he sent numerous notifications to the City making it "abundantly clear" that Coyote was exercising the 15-year Option. The City filed a reply to the opposition to the demurrer to the FAC.

D.    TRIAL COURT RULING ON DEMURRER TO THE FAC

The trial court issued a tentative ruling on February 2, 2023. The trial court reviewed the provisions in the April Lease. It then noted the language in the Amended Lease that the parties intended to rescind the April Lease and enter into a new lease in its place. It quoted the language in the Amended Lease as to the term, notices and the 15-year Options. The trial court noted that the two leases were "clearly different." The Amended Lease was not ambiguous as to notice on the 15-year Option; City must be given 45 days prior to April 4, 2020. The trial court noted that Coyote's argument for breach of contract was based on its allegation that it had fully performed its duties and obligations under the Amended Lease. However, Coyote's own allegations and exhibits demonstrated that it failed to timely exercise the 15-year Option under the terms of the

16

Amended Lease. The trial court sustained the City's demurrer to the first cause of action. Given that it was finding that there was no claim for breach of contract, the second cause of action on specific performance also failed.

The third cause of action, breach of implied covenant of good faith and fair dealing, required proof that the City unfairly interfered with Coyote's right to receive the benefit of the contract. The Amended Lease provided a termination date and deadline by which Coyote had to deliver written notice of its intent to exercise the 15-year Option, which Coyote failed to timely deliver. Under the doctrine of implied covenant, the implied covenant could not contradict the express terms of the contract. Under the express terms of the Amended Lease, Coyote had to timely exercise the 15-year Option and failed to do so. The declaratory relief claim in the fourth cause of action was part of the substantive claim and would also be denied. Finally, the fifth cause of action for promissory estoppel, the trial court found the claim was that Coyote relied on the promise made on December 5, 2000, by a City official, that City acknowledged the termination date error and made a clear promise to honor the full 20-year term to September 5, 2020. The trial court cited to cases holding that promissory estoppel could not be asserted against a public entity to bypass rules that required contracts to be in writing. Pursuant to Government Code section 40602, a mayor shall sign all written contracts. Redlands Municipal Code section 3.04.010 only authorized contracts approved by the City council and mayor. There was no promise that was reduced to writing, approved by the City council and signed by the City's mayor. The trial court sustained the demurrer to the

17

fifth cause of action. The trial court would consider arguments at a hearing on the demurrer whether leave to amend should be granted.

The hearing was held on February 2, 2023. At the hearing on the demurrer, Coyote argued as to promissory estoppel that it could amend to allege extraordinary circumstances that would allow a City to be liable under the theory. Coyote also sought to amend to claim it had been overpaying rent and a claim regarding the tenant improvements. The City argued there was no amendment to the FAC that could be made based on the unambiguous language in the Amended Lease. Further, it would be inappropriate to add new causes of action. The trial court took the matter under submission and agreed to consider the arguments on leave to amend.

The trial court on February 8, 2023, issued its ruling that the demurrer to the FAC was sustained without leave to amend. An order entering judgment was filed on April 28, 2023, sustaining the demurrer to the FAC in its entirety and without leave to amend. The City was named the prevailing party. Coyote filed a notice of appeal on June 23, 2023.

The City filed a motion for attorney fees on June 27, 2023. The trial court granted the request for attorney fees in the amount of $38,499. On September 8, 2023, Coyote filed a notice of appeal from the grant of attorney fees.

E.      UNLAWFUL DETAINER PROCEEDINGS

On December 28, 2021, the City served Coyote with a 30-day notice to vacate the premises. It required that Coyote remove all equipment and structures. Coyote did not vacate the premises.

18

The City filed its Unlawful Detainer Complaint against Coyote on February 14, 2022. The City contended that the Amended Lease had expired on April 4, 2020, and pursuant to its terms, continued on a month-to-month basis. Coyote filed an answer on March 17, 2022.

The City filed a motion for summary judgment contending that Coyote failed to timely exercise the 15-year Option to extend the Amended Lease. The Amended Lease had expired, and the City was entitled to possession of the Property. The Amended Lease was the entire agreement between the parties and superseded any prior agreements. Coyote was served with a 30-day notice to vacate the Property but was still occupying the Property. The City alleged it was entitled to attorney fees and costs, and unpaid rent. The City requested that the trial court take judicial notice of the tentative ruling and judgment in the case involving the grant of the demurrer to the FAC.

Coyote filed a response to the motion for summary judgment. Coyote contended, as it did in opposing the demurrer to the FAC, that it had given timely notice to the City that it was exercising the 15-year Option in December 2019 and January 2020; that through the City's authorized agents, the City had waived any objection to the timeliness of Coyote's exercise of the 15-year Option; and the City was estopped from contending the exercise of the 15-year Option was untimely. The City filed a response. The ruling on the demurrer had been made by the trial court in the breach of contract case. The City requested that the trial court in the unlawful detainer action find the same way as the trial court in the demurrer case. It should find that written notice was required in order to exercise the 15-year Option and that Coyote failed to timely provide written notice.

19

Further, the trial court should similarly find that there were no grounds for promissory estoppel and waiver as officials from the City stated that the Amended Lease "could" be amended but no written amendment was ever executed.

The trial court issued a tentative ruling on February 2, 2023, granting the City's motion for summary judgment.[2] A hearing was conducted on February 3, 2023. Coyote insisted that the term "may" indicated that Coyote could notify in writing or other means. The parties used "shall" numerous times in the Amended Lease and knew the difference. The trial court felt that based on the totality of the language in the Amended Lease, notice had to be in writing. Coyote argued that the Amended Lease was approved by the City council and no further approval was required under the rules of the municipal code or general law to extend the lease under the 15-year Option. The trial court allowed the parties to provide supplemental briefing.

On February 17, 2023, Coyote filed a supplemental brief. Coyote argued the City accepted Coyote's June 23, 2020, written notice, waiving the required February 19, 2020, notice. Coyote additionally argued that assuming the Amended Lease terminated on April 4, 2020, and the City accepted Coyote as a month-to-month holdover tenant, it was under the same terms and conditions, including having the right to exercise the 15-year Option up until at least September 2020. Further, there was a triable issue of fact as to promissory estoppel. Coyote insisted the Government Code and Municipal Code only

---

[2] The trial court issued a final written ruling. The tentative ruling is not necessary to the issues on appeal.

20

applied to "new agreements." The 15-year Option was part of the Amended Lease that was approved in writing.

The City filed a response to Coyote's supplemental briefing. It insisted there was no evidence presented to support their claims. Coyote had provided no admissible testimony on the authority of the City staff to bind the City to the 15-year Option. Moreover, the holdover tenancy did not include the 15-year Option. Coyote filed a reply.

Another hearing was held on March 10, 2023. The trial court clarified Coyote's argument that the holdover month-to-month tenancy included the right to exercise the 15-year Option. Coyote insisted that the exercise of the 15-year Option did not require approval by the City council and be signed by the City's mayor. The City argued it made no sense that Coyote could exercise a 45-day notice option when it was a month-to-month tenant. Further, notice had to be given in writing to the City clerk; no other notice was sufficient.

After the hearing, on April 18, 2023, the trial court filed a memorandum opinion and order granting the City's motion for summary judgment on the complaint for unlawful detainer. It considered the written arguments submitted prior to the February 3 and March 10, 2023 hearings, and the argument at the hearings.

The trial court reviewed the facts of the case derived from the factual summary from the parties' separate statements of material facts, declarations, attached exhibits and requests for judicial notice. It found the Amended Lease was clear that notice of exercising the options required written notice 45 days prior to the termination date of the Amended Lease. Any other interpretation violated the statutory rules of construction by

inviting ambiguity rather than resolving it. Further, paragraph 25 of the Amended Lease provided that all notices must be mailed and in writing to the specific address listed in the Amended Lease. The trial court found that it could not interpret the Amended Lease to create conflicts between its provisions. The trial court further rejected the month-to-month tenancy that continued the Amended Lease under the same terms and conditions, necessarily meant that it included the 15-year Options.

The trial court found that the City had met its initial burden of production of material facts to support the unlawful detainer. Coyote failed to meet its burden of showing a material issue of fact existed. First, the termination date of the Amended Lease was clear and there was no need to consider parol evidence under Code of Civil Procedure section 1856. Coyote's argument ignored that there was an agreed upon integration clause in the Amended Lease. As a matter of law, the termination date of the Amended Lease was April 4, 2020. The terms of the Amended Lease required 45 days written notice prior to the termination date. Further, there was no waiver by the City of the requirement to provide written notice.

As for promissory estoppel, it was a closer question. The rule of estoppel only applied against a public agency in those special cases where the interests of justice required it. The trial court relied on Government Code section 40602, subdivision (b), and Redlands Municipal Code section 3.04.010 that the City staff did not have authority to enter into and approve contracts.

A hearing on the proposed judgment was held on May 19, 2023. The parties discussed the resolution of the tenant improvements on the Property. Coyote argued that the issue of the hangers on the Property had to be resolved by further litigation. The City agreed that the unlawful detainer only applied to the possession of the Property and did not adjudicate the tenant improvements. The trial court agreed the judgment on holdover damages and title to the tenant improvements would be determined in a separate proceeding.

Judgment on the unlawful detainer was entered on July 17, 2023.[3] The judgment stated that it only granted possession of the Property to the City. It further provided, "This Judgment is not an adjudication of any of the defendants' ownership interests in the alterations, improvements, fixtures, or units that exist on the Property. This Judgment grants possession to the City only, and in no way forecloses or otherwise precludes any defendant in this action from commencing a separate civil action to determine its ownership interests, if any, in the structures, alterations, improvement, fixtures or units that exist on the Property."

Coyote filed a notice of appeal on August 10, 2023, in the appellate division of the San Bernardino Superior Court. On March 29, 2024, Coyote filed its opening brief in the San Bernardino County Superior Court's appellate division. The appeal was transferred to this court to be decided with the ruling on the demurrer to the FAC.

---

[3] On February 29, 2024, Coyote requested that this court take judicial notice of the unlawful detainer judgment. Since it is part of the record on appeal, we deny the request.

23

**DISCUSSION**

A.      <u>DEMURRER</u> <u>CAUSES OF ACTION GRANTED</u>

         1.      *DEMURRER*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

         2.      *BREACH OF CONTRACT*

Coyote claims the trial court erred by sustaining the demurrer to the first cause of action for breach of contract and the second cause of action for specific performance based on the City's breach of the contract by refusing to extend the Amended Lease term and rejecting Coyote's exercise of the 15-year Option. Coyote insists that both the language in the Amended Lease and the extrinsic evidence surrounding the formation of the Amended Lease showed the terms were ambiguous. The extrinsic evidence— including the April Lease—clearly showed that the intent of the parties was that the Amended Lease would be for a 20-year term. Moreover, City officials throughout the

24

term of the Amended Lease stated that the actual termination date of the Amended Lease was September 5, 2020. Coyote further refers to the increase in square footage to 53,658 of which Coyote believed was an amendment to the Amended Lease that was corrected along with the termination date. Further, the trial court erred by relying on the Government Code and Redlands Municipal Code, which applied only to new contracts. Staff throughout the years stated that the Amended Lease was for a 20-year term and there was no requirement of a new lease that had to be in writing.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Coyote insists that it sufficiently pleaded that it had performed its obligations under the Amended Lease to exercise the 15-year Option and that the City breached its duty under the Amended Lease by refusing to honor the 15-year Option. Coyote relies on extrinsic evidence, which included the agreement by the parties that the lease term was 20 years, and that City officials promised that the Amended Lease expired on September 5, 2020.

" 'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.' " (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1060.) "[E]xtrinsic evidence cannot be used to contradict the contract's terms unless the language is 'reasonably susceptible' to the proposed interpretation. [Citation.] Indeed, unless the language is 'reasonably

25

susceptible' to the proposed meaning, extrinsic evidence cannot even be considered to explain or otherwise shed light upon the parties' intent." (*Id.* at p. 1061.)

Moreover, under the parol evidence rule, when a contract is integrated, extrinsic evidence cannot be used to vary or contradict the instrument's express terms. (Code Civ. Proc., § 1856 ["(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement"]. " 'Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was. [Citation.] The agreement is the writing itself. [Citation.] . . . Parol evidence cannot . . . be admitted to show intention independent of an unambiguous written instrument." (*Cerritos Valley Bank v. Stirling* (2000) 81 Cal.App.4th 1108, 1115-1116.)

There are no grounds for the consideration of extrinsic evidence in this case. Coyote signed the Amended Lease. The Amended Lease provided for a termination date of April 4, 2020, and all notices must be in writing and sent to the City clerk 45 days prior to the termination of the Amended Lease. It provided that any amendment to the Amended Lease was to be in writing. It also included an integration clause, which provided that the Amended Lease superseded all prior written and oral agreements, and was the entire agreement between the parties. We further note that the termination date in the April Lease and the Amended Lease are the same date.

26

It is clear that Coyote never provided written notice to the City clerk 45 days prior to April 4, 2020. The City did not have to accept any other type of notice, including any email notices to Shaffer and/or Sullivan that were made in December 2019 and January 2020. The terms of the Amended Lease were clear that if Coyote was in good standing under the Amended Lease, it "may" exercise the 15-year Option. The Amended Lease simply cannot be interpreted that the term "may" referred to the ability to provide any type of notice. This would contradict the express provision in paragraph 25 that all notices must be in writing. Coyote simply cannot prove it performed its duty under the Amended Lease to provide proper written notice of its decision to exercise the 15-year Option. As such, the breach of contract and specific performance causes of action fail.

Coyote makes several claims that this court must consider the extrinsic evidence because such evidence must first be considered prior to consideration of the language of the Amended Lease; that the integration clause in the Amended Lease does not bar the introduction of extrinsic evidence; and there was mistake and imperfection in the Amended Lease that was put in issue in the pleadings. We have reviewed the cases and arguments by Coyote and they do not support that the Amended Lease, which included an explicit integration clause, was ambiguous and required that the trial court consider extrinsic evidence. Extrinsic evidence is not admissible to " 'vary, alter or add to the terms of an integrated written agreement.' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) "The parol evidence rule . . . establishes that the terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements . . . the rule necessarily bars consideration of extrinsic evidence of prior or

27

contemporaneous negotiations or agreements at variance with the written agreement." (*Id.* at p. 344.) There was no ambiguity that needed to be resolved by extrinsic evidence. The termination date in the Amended Lease was April 4, 2020, amendments had to be in writing, and the exercise of the 15-year Option was required to be made 45 days prior to termination of the Amended Lease and had to be in writing. Coyote is not contending the "meaning" of the terms in the Amended Lease must be interpreted to mean something other than what the written agreement stated, but rather seeks to alter the terms of the integrated agreement to change the termination date. This is not a proper use of parol evidence.

Coyote argues that the terms of the Amended Lease must be construed against the City because it drafted the Amended Lease. This argument assumes that the Amended Lease is ambiguous, which it is not. Further, Coyote claims the termination date in the Amended Lease was never disclosed, but Coyote signed the Amended Lease, which contained the term. Coyote also claims that after the Amended Lease was signed, officials from the City "lulled Coyote into believing that the City had corrected the April 4 date in the Lease to September 5." However, the Amended Lease specifically required all amendments to be in writing. There is no evidence that there was a written amendment to the Amended Lease. Coyote cannot raise a viable claim that the Amended Lease had been changed by oral agreement by City officials. Finally, Coyote points to the fact that it was paying rent on 53,658 square feet but the Amended Lease only stated that it was using 36,000 feet. The Amended Lease provided that Coyote could request

more square footage. This fact has no impact on the termination date of the Amended Lease.

Coyote requests leave to amend in order to raise a claim that there was a breach of contract related to the tenant improvements. This was not part of the FAC, as, at the time, Coyote was still in possession of the Property. At the hearing on February 2, 2023, Coyote raised the issue of the requirement to remove the improvements and wanted the trial court to provide a "declaration" of how the process should take place and the time frame for removal of the improvements. The trial court issued its order sustaining the demurrer without leave to amend to address the tenant improvements. In its appellants' reply brief, Coyote claims that it could have raised the claim at the time of the FAC. However, Coyote was still in possession of the Property and there had been no action taken on the tenant improvements. Coyote acknowledges that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) The decision on the unlawful detainer was still pending at the time of the ruling on the demurrer and Coyote still was in possession of the Property. No decision was made on the tenant improvements and the trial court was not required to give an advisory opinion on what had to be done with the tenant improvements. Further, as noted by the City in its brief, and acknowledged by Coyote, such issues are being separately litigated.[4]

---

[4] We grant the City's July 2, 2024, request to take judicial notice of the complaint in *Coyote Aviation Corporation, et al. v. City of Redlands, et al.,* San Bernardino County Superior Court case No. CIVSB2418252, for the sole purpose that the issue of tenant

*[footnote continued on next page]*

We see no reason to allow Coyote to amend the FAC to include the tenant improvement issue when it is being separately litigated and was not an issue at the time of the ruling on the demurrer. We deny any request by Coyote to amend to include this issue.

### 3. WAIVER

Coyote further contends the City should be estopped from contending that Coyote did not timely exercise the 15-year Option and that the Amended Lease expired on April 4, 2020, as its actions showed that it believed it expired on September 5, 2020. The City contributed to and caused any failure of Coyote to timely exercise the 15-year Option. Coyote insists that Government Code section 40602 and Redlands Municipal Code section 3.04.010 did not apply to the exercise of the 15-year Option as it was not a new contract that had been approved by the City council and signed by the Mayor. Further, all the actions by Shaffer and/or Sullivan, such as advising Coyote that it would meet with Coyote in July 2020 to discuss the extension of the lease, showed that Coyote believed the Amended Lease expired on September 5, 2020.

There was no waiver of the termination date. As previously stated, the Amended Lease provided that all amendments had to be in writing. There is no evidence that the Amended Lease was ever amended to include the termination date of September 5, 2020. Even if City officials stated orally that the expiration date was September 5, 2020, the

---

improvements is being separately litigated. We deny Coyote's September 6, 2024, conditional request to take judicial notice of further documents filed in the case, as they are unnecessary to resolve the appeal and have not been decided by the trial court.

only way to change the date was to execute a written amendment. Any oral promises did not constitute waiver of the termination date.

Moreover, Shaffer and/or Sullivan could not agree to accept the exercise of the 15-year Option. Government Code section 40602, subdivision (b) provides, "The mayor shall sign: . . . [¶] (b) All written contracts and conveyances made or entered into by the city." Redlands Municipal Code section 3.04.010 is entitled "CONTRACT SIGNING AND ATTESTATION" and provides, "All contracts authorized or awarded by the city council shall be signed by the mayor, and attested by the city clerk for and on behalf of the city, unless otherwise provided by law or by the council."[5]

There is no dispute that the 15-year Option had to be submitted in writing to the City clerk 45 days prior to the termination date of the Amended Lease. Coyote posits Shaffer and Sullivan began discussing the lease expiration with Coyote in January 2020 and they were to meet in July. Coyote provided no evidence that City officials advised Coyote that it did not need to provide the written notice to exercise the 15-year Option as required by the Amended Lease. Coyote sent a written notice of exercising the 15-year Option to Shaffer and Sullivan on June 23, 2020, which they accepted, even though under the Amended Lease notice was required to be sent to the City clerk. However, Shaffer and Sullivan could not accept the 15-year Option, as the Amended Lease had already expired. In order to extend the Amended Lease, the parties would have to reach a new agreement, which would have to be approved by the City council and mayor under

_____

[5] https://codelibrary.amlegal.com/codes/redlandsca/latest/redlands_ca/0-0-0-1599, as of June 3, 2025.

31

Government Code section 40602 and Redlands Municipal Code section 3.04.010. The trial court properly sustained the demurrer to the first and second causes of action.

4. *BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING*

Coyote contends the trial court erred by sustaining the demurrer for the third cause of action of breach of implied covenant of good faith and fair dealing. Coyote argues the City misled Coyote as to the termination date of the Amended Lease so that it could regain possession and control of the tenant improvements without paying for them. Coyote was denied possession of the Property for the next thirty years.

" ' "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." ' " (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371.) "It is well settled that 'an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.' " (*Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 252.) "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." (*Carma*, at p. 374.) In *Bevis*, the court held that the defendants could not be "held liable for breach of the implied covenant of good faith and fair dealing by implementing rent increases that the parties' written lease agreements expressly authorized." (*Bevis*, at p. 253.)

Here, Coyote seeks to contradict the express terms of the Amended Lease by claiming the City misled it to believe that the Amended Lease expired on September 5, 2020. The express term of the Amended Lease stated that it expired on April 4, 2020. Moreover, the City did nothing to stop or mislead Coyote from sending the proper 45-day written notice exercising the 15-year Option. If Coyote had sent the notice under the express terms of the Amended Lease, there is nothing in the evidence that supports the City would not have accepted it in order to obtain the tenant improvements. The trial court properly sustained the demurrer as to the third cause of action.

5.    *REFORMATION*

Coyote also contends the trial court erred by sustaining the demurrer to Coyote's reformation cause of action. Coyote argued in the Complaint that the City officials agreed in 2000 that the Amended Lease should expire on September 5, 2020. Coyote insists that despite having knowledge of the expiration date in the Amended Lease in 2000, the claim was not time-barred as the statute of limitations was tolled and the City is equitably estopped from asserting the statute of limitations. Coyote raised this claim in the Complaint and the trial court sustained the demurrer to the Complaint. Coyote did not raise a reformation cause of action in the FAC. The trial court originally ruled that it could not amend the reformation claim because it was time-barred but changed its ruling at the hearing on the demurrer to the Complaint. It allowed Coyote to amend the reformation claim in the FAC. The FAC raised no cause of action for reformation. As such, the claim cannot be reviewed on appeal. (See *Leibert v. Transworld Systems, Inc.*

33

(1995) 32 Cal.App.4th 1693, 1698 ["By electing to amend his complaint, appellant waived any error in the ruling sustaining the demurrer" to the first complaint].)

6. *PROMISSORY ESTOPPEL*

Coyote insists it stated a claim for promissory estoppel. " 'Promissory estoppel is described as: " 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " ' " (*Los Angeles Equestrian Center, Inc. v. City of Los Angeles* (1993) 17 Cal.App.4th 432, 448.) "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.' " (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692.)

"As a general rule, a public entity cannot be sued on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations." (*Los Angeles Equestrian Center, Inc. v. City of Los Angeles*, *supra*, 17 Cal.App.4th at p. 449.) "Further, the general rule is that a city may not be estopped by the conduct of its officers or employees. [Citation.] 'There are occasions for departure from the general rule that a city may not be estopped by the conduct of its officers or employees. [Citation.] But such departure is justified only when the facts clearly establish that a grave injustice would be done if an equitable estoppel were not

34

applied.' " (*Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 830.)

As previously stated, the Amended Lease provided that the termination date was April 4, 2020. In order to amend the Amended Lease to provide that it would expire on September 5, 2020, it would require a written amendment and a change to the term length. This written contract would have to be approved by the City council and signed by the mayor as it obligated the City to a longer lease term. (See *G.L. Mezzetta v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1093.) Further, as for Shaffer and Sullivan accepting the 15-year Option in June 2020, the Amended Lease had expired. No written notice under the terms of the Amended Lease was sent by Coyote prior to the termination date of the Amended Lease. These City officials could not bind the City to the 15-year Option based on their oral agreement to accept the exercise of the option. Moreover, since the Amended Lease had expired prior to the exercise of the 15-year Option, the determination that Coyote could lease the Property for an additional 15 years was a new agreement that had to be approved by the City council and signed by the City's mayor under both the Government Code and Redlands Municipal Code. The trial court properly determined that the promissory estoppel claim failed based on the City employees not having the authority to bind the City to an amendment to the Amended Lease or to extend the Amended Lease after its expiration.

Finally, Coyote brought a cause of action for declaratory relief. However, this claim was based on the substantive claims of breach of contract and promissory estoppel which have been rejected.

35

B.      POTENTIAL AMENDMENT CLAIMS

"When the court has sustained a demurrer without leave to amend, the burden is on the plaintiff to demonstrate how he can amend his complaint, and how that amendment will change the legal effect of his pleading." (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902.)

1.      *EQUITABLE ESTOPPEL*

Coyote insists it should be granted leave to amend to raise a claim of equitable estoppel. Coyote appears to claim that it can amend the reformation claim to prove that the City was estopped from raising the claim that it was time-barred based on statements or conduct of the City's official. He insists that promises were made in 2000 by a City official that the Amended Lease did not expire until September 5, 2020, and the Amended Lease would be amended. Coyote relied on the representation and did not file suit at the time. The City cannot raise the time bar.

" In appropriate cases, a defendant may be equitably estopped from asserting a statutory limitations period. [Citation.] ' " 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his [or her] injury.' " ' [Citations.] [¶] In the statute of limitations context, equitable estoppel may be appropriate where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from

filing a timely suit. [Citation.] The requisite act or omission must involve a misrepresentation or nondisclosure of a material fact bearing on the necessity of bringing a timely suit. [¶] Notably, however, even a defendant who is ignorant or mistaken as to the real facts may be equitably estopped if the defendant was ' " 'in such a position that he [or she] ought to have known' " ' the true facts." (*Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1028.) " 'When the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of an estoppel is a question of law.' " (*Id.* at p. 1029.)

Here, Coyote insists that it can allege equitable estoppel to show that it relied on the City to amend the Amended Lease to change the termination date. However, Coyote was aware that a written amendment to the Amended Lease was never executed. Coyote was not ignorant of this fact and could not rely on the oral promise when it was aware the Amended Lease was never amended in writing as required by the terms of the Amended Lease. In fact, even if Coyote's allegation in the reply brief is accepted as true that it did not become aware that the Amended Lease was never changed to reflect the September 5, 2020, termination date until January 2020, this was still before it had to send notice to exercise the 15-year Option. This did not prohibit Coyote from giving the proper written notice to exercise its 15-year Option 45 days prior to the termination date of April 4, 2020, despite the oral promise. Coyote was not ignorant of the fact that the Amended Lease expired on April 4, 2020, and that it was required to provide written notice 45 days prior to the expiration date in order to extend the Amended Lease. Coyote cannot amend the FAC to raise a viable claim of equitable estoppel.

37

## 2.    *UNJUST ENRICHMENT*

Coyote also seeks leave to amend in order to raise a claim of unjust enrichment based on the City taking possession of the tenant improvements. The City insists that leave to amend should not be granted because the resolution of this issue is part of a separate action.

Initially, Coyote's claim is not entirely clear. Coyote makes some argument that the unlawful detainer action awarding the Property and tenant improvements to the City without a full and fair hearing raises a claim under the Fourth, Fifth and Fourteenth Amendments. However, Coyote also admits that the issue of ownership of the tenant improvements was not decided in the unlawful detainer action. However, Coyote insists that if the City were to be awarded these tenant improvements, it would be unjust enrichment to the City. As discussed, *ante*, there was no resolution of the tenant improvements at the time that the demurrer was sustained and the time of the unlawful detainer. Such claims are being resolved in a separate action. The instant case does not warrant leave to amend to resolve these claims in this action.

Coyote does not allege any further amendments could be made to the FAC. There are no grounds for reversing the trial court's order denying leave to amend the FAC.[6]

---

[6] Coyote further contends that if this court reverses the ruling of the trial court, the attorney fee award should be reversed. Since we uphold the trial court's ruling sustaining the demurrer, we need not address this claim.

C.    UNLAWFUL DETAINER

Coyote contends that the trial court erred by granting summary judgment on the unlawful detainer action based on there being triable issues of fact whether (1) the City should be estopped from contending that the Coyote's exercise of the 15-year Option was untimely; (2) the City waived any objection to the Coyote's exercise of the 15-year Option; (3) extrinsic evidence showed an ambiguity in the Amended Lease that had to be adjudicated; and (4) Coyote gave the City notice that it was exercising the 15-year Option in December 2019 and January 2020.

Coyote acknowledges that these are the same arguments raised on appeal in the demurrer action.  We have already rejected these claims and find that they equally apply to the unlawful detainer action.

Coyote concludes in the reply brief that equitable relief should be granted in this case to prevent a significant injustice to Coyote through the loss of its multi-million dollar investment in tenant improvements.  However, Coyote agreed in the Amended Lease that upon termination of the Amended Lease, it would have to remove all improvements.  It was aware of the risk.  Further, the issue of the tenant improvements is not properly considered in this appeal and has not been resolved.  Moreover, nothing stopped Coyote from reading the Amended Lease and complying with its provisions; it was keenly aware that the Amended Lease was never amended in writing.  The City did nothing to prohibit Coyote from giving the 45-day notice.  Coyote had the right to send written notice that it was exercising the 15-year Option but failed to do so.  The trial court

properly sustained the demurrer to the FAC and granted summary judgment on the unlawful detainer action.

**DISPOSITION**

The judgment is affirmed in full. The City is awarded costs on appeal as the prevailing party.

CERTIFIED FOR PUBLICATION

MILLER
                                                    J.

We concur:

RAMIREZ
            P. J.

McKINSTER
        J.